# GREEN v DEPARTMENT OF ADMINISTRATION, DIVISION OF RETIREMENT

## Case No. 85-1824

State of Florida, Division of Administrative Hearings

October 4, 1985

## APPEARANCES OF COUNSEL

**Michael A. Coffee** for petitioner.

**Augustus D. Aikens, Jr.** for respondent.

## OPINION

J. LAWRENCE JOHNSTON, Hearing Officer.

Final hearing was held in this case in Bradenton on August 22, 1985. The issue is whether the Respondent, Department of Administration, Division of Retirement (Division), should process the application of Petitioner, Timothy Green (Green), for disability retirement benefits from the Florida Retirement System (FRS), notwithstanding his withdrawal of his contributions to the FRS. Specifically, the issue becomes whether Green waived his right to apply for disability retirement benefits from the FRS by withdrawing his contributions to the FRS.

## FINDINGS OF FACT [1]

1. Petitioner, Timothy Green (Green), was born on April 19, 1941. Green was employed by Manatee County as a Highway Maintenance Technician on March 26, 1966. As a Highway Maintenance Technician, Green cleared ditches, brush and culverts. He also installed storm drainage pipe and operated chain saws and related tools.

2. On September 24, 1984, Green was terminated from his job because of his inability to perform his assigned duties. Green referred to his termination as a "retirement." Having been promoted to Highway Maintenance Technician II, Green was earning $1,016.01 per month gross pay at the time he was terminated. He had accumulated 18.40 years of creditable service under the Florida Retirement System (FRS).

3. Green is unable to read and has had no formal schooling other than the attendance of what he describes as "opportunity classes all his life." Green has not been found by any court to be incompetent to handle his personal affairs and generally paid his personal bills through money orders he purchased at convenience stores. However, Green's mental capabilities and ability to communicate are obviously quite limited, and his more complicated personal affairs were handled by his mother and sister.

4. On September 28, 1984, Green sought out and met with Mr. Al Chandler, Records Manager for Manatee County, at Chandler's office. Green though that Manatee County already had "retired" him because of his disability and just wanted to get his retirement benefits. He did not understand the various optional benefits available to him as a

---

[1] Both parties submitted proposed findings of fact. The proposed findings of fact were reviewed, and the following Findings of Fact attempt to rule, either directly or indirectly, on each proposed finding of fact. Proposed findings of fact which were approved and adopted are reflected in the following Findings of Fact. Where proposed findings of fact are not reflected and no direct ruling rejecting them is apparent, the proposed findings of fact have been rejected as being subordinate, cumulative, immaterial or unnecessary.

member of the FRS. Green was able to communicate to Chandler only that he wanted to get all his money from retirement, or words to that effect. Chandler interpreted those words to mean that Green wanted to withdraw his contributions to the system.

5. Based on his general familiarity with the FRS, Chandler discouraged Green from doing what he believed Green wanted to do (*i.e.,* withdraw his contributions from the system). Chandler believed intuitively that Green should not withdraw his contributions because he had accumulated 18.40 years of creditable service under the FRS. Chandler understood that Green's years of creditable service would entitle him to favorable benefits upon normal retirement at age 62. He therefore advised Green to wait and not to withdraw the contributions.

6. Green, who never clearly understood the difference between getting his money (or benefits) out of the retirement system and withdrawing his contributions to the retirement system, decided that he did not want to wait as Chandler advised. Accordingly, Chandler gave Green a form to request a refund of his contributions to the FRS, and Green signed the form.

7. The Request for Refund Form FRS-81 Green signed contains the following information above his signature:

TO THE DIVISION OF RETIREMENT: I hereby make application for refund of my accumulated contributions in the Florida Retirement System. I do hereby waive for myself, my heirs and assignees all rights, title and interest in the Florida Retirement System.

However, Green could not read the refund language. He did not think there was any reason to ask Chandler to read it to him, and Chandler did not read it or explain it to him.

8. Neither Chandler nor anyone else fully explained to Green what optional benefits he might be entitled to as a member of the Florida Retirement System other than to wait until normal retirement or withdraw his contributions. Specifically, neither Chandler nor anyone else explained to Green that his request for refund of his accumulated contributions would eliminate his right to apply for disability retirement benefits. In fact, on the same day, September 28, 1984, Green began completing an application for disability retirement benefits.

9. On October 2, 1984, Green's Statement of Disability By Employer was received by Manatee County's Personnel Office. The form was completed by Green's former immediate supervisors.

10. On October 3, 1984, Green's Request For A Refund Form FRS-

M81 was mailed to Respondent, Department of Administration, Division of Retirement (Division) by Manatee County.

11. Sometime between October 18, 1984 and November 20, 1984, Green's completed Florida Retirement System Application For Disability Retirement, with his Statement Disability By Employer, was sent to and received by the Division.

12. On October 29, 1984 the Division sent Green the refund of his accumulated contributions totaling $1,686.52. Until Green received the refund, he expected to receive monthly checks. When he received the refund, Green realized for the first time that he would not be receiving monthly checks and that his lump sum check would be in the amount of only $1,686.52.

13. Green never had any actual intent to relinquish his right to apply for disability retirement benefits from the FRS.

### CONCLUSIONS OF LAW

1. Section 121.091(5), Florida Statutes (Supp. 1984), provides in pertinent part:

> . . . . . . . . . .

> (b) A member whose employment is terminated for any reason other than death or retirement after the completion of 10 years of creditable service may elect to receive a deferred monthly benefit which shall commence on the last day of the month of his normal or early retirement and shall be payable on the last day of each month thereafter during his lifetime. The amount of the monthly benefit shall be computed in the same manner as for a normal retirement benefit in accordance with subsection (1) or early retirement benefit in accordance with s. 121.021(30), but based on average monthly compensation and creditable service as of his date of termination.

> (c) In lieu of the deferred monthly benefit provided in paragraph (b), the terminated member may elect to receive a lump-sum amount equal to his accumulated contributions as of his date of termination.

> . . . . . . . . . .

2. Section 121.081(2), Florida Statutes (Supp. 1984), provides in pertinent part:

> Prior service, as defined in s. 121.021(19), may be claimed as creditable service under the Florida Retirement System after a member has been reemployed for 12 continuous months. The member shall not be permitted to make any contributions for prior service until after the 12-month period. The required contributions for claiming the various types of prior service are:

258

(a) For prior service performed prior to the date the system becomes noncontributory for the member and for which the member had credit under one of the existing retirement systems and received a refund of contributions upon termination of employment, the member shall contribute 4 percent of all salary received during the period being claimed, plus 4 percent interest compounded annually from date of refund until July 1, 1975, and 6.5 percent interest compounded annually thereafter, until full payment is made to the Retirement Trust Fund.

(b) For prior service performed prior to the date the system becomes noncontributory for the member and for which the member had credit under the Florida Retirement System and received a refund of contributions upon termination of employment, the member shall contribute at the rate that was required of him during the period of service being claimed, on all salary received during such period, plus 4 percent interest compounded annually from date of refund until July 1, 1975, and 6.5 percent interest compounded annually thereafter, until the full payment is made to the Retirement Trust Fund.

(c) For service performed after the Florida Retirement System becomes noncontributory for the member, and for which the member had credit under the Florida Retirement System at the date of termination of employment, the member shall not be required to make any contributions in order to receive prior service credit, but such credit shall not be granted until the member has been reemployed for 12 continuous months.

(d) For prior service as defined in s. 121.021 (19)(b) and (c) during which no contributions were made because the member did not participate in a retirement system, the member shall contribute 9 percent of all salary received during such period or 9 percent of $100 per month during such period, whichever is greater, plus 4 percent interest compounded annually from the first year of service claimed until July 1, 1975, and 6.5 percent interest compounded annually thereafter, until full payment is made to the Retirement Trust Fund.

· · · · · · · · · · ·

Sections 121.091(5)(c) and 121.081(2), read together, clearly provide the exclusive method for becoming reinstated as a member of the Florida Retirement System (FRS) and reclaiming prior service as creditable service after a former member has been terminated and elected to receive a lump sum amount equal to his accumulated contributions as of his date of termination. However, there is no statutory prohibition against a member who has been terminated and

**259**

who has exercised his right under Section 121.091(5)(c) to elect to receive a lump sum amount equal to his accumulated contributions from thereafter applying for disability retirement benefits under Section 121.091(5)(b) and (c) speaks only to an election between the benefits described in (b) and (c). It does not describe an election of one of those two benefits in lieu of disability retirement benefits under Section 121.091(4).

3. Although there is no statutory prohibition against a person such as Petitioner, Timothy Green (Green), applying for disability retirement benefits under Section 121.091(4), the facts in this case raise the issue whether Green waived his right to apply for disability retirement benefits. In requesting a refund of his accumulated contributions, Green signed a statement to Respondent, Department of Administration, Division of Retirement (Division):

I hereby make application for a refund of my accumulated contributions in the Florida Retirement Systems. I do hereby waive for myself, my heirs and assignees all rights, title and interest in the Florida Retirement Systems.

The question becomes whether Green effectively waived his right to apply for disability retirement benefits.

4. Waiver is the intentional relinquishment of a known right or the voluntary relinquishment of a known right or conduct which warrants an inference of the relinquishment of a known right. 22 Fla.Jur. 2d *Estoppel and Waiver*, Section 86 (1980). The acts or conduct which may give rise to a waiver need not be positive but can consist of failure to act or, more particularly, failure to speak when under some duty to speak. *Richards v. Dodge*, 150 SO.2d 477 (Fla. 2d DCA 1963). Waiver may be inferred from conduct or acts putting one off his guard and leading him to believe that the demanding party has waived the right sought to be enforced. *Davis v. Davis*, 123 So.2d 377 (Fla. 1st DCA 1960). However, as reflected in the Findings of Fact, the evidence in this case did not prove that Green waived his right to apply for disability retirement benefits.

In this case, the evidence was that Green has limited mental capabilities and ability to communicate. When Green spoke with Mr. Chandler about getting his money from retirement, he did not understand why it was important to be precise when asking Mr. Chandler to help him, and Green was not able to communicate adequately to Chandler specifically what he was asking Chandler to help him to do. Misunderstanding, Chandler explained to Green how to withdraw his accumulated contributions in the FRS but discouraged Green from doing so, advising him to wait some 18 years to receive normal

retirement. Green did not understand what Chandler was trying to tell him and did not understand that Chandler had misunderstood him. Green did know that he did not want to wait 18 years to begin receiving retirement benefits. Green's understanding was that Manatee County already had "retired" him, and he wanted to begin receiving disability retirement benefits immediately. He did not understand, and Chandler did not explain to him, that getting his money from retirement was going to jeopardize his ability to apply for disability retirement benefits.

Green was not able to read or understand the statement he signed as part of the Request For Refund Form FRS-M81. Not knowing that Green could not read, Chandler did not read or try to explain the statement to Green. Green, thinking he was simply requesting to receive his money from retirement, did not think to ask Chandler to read or explain the statement to him.

Taking all these circumstances into consideration, the evidence does not support a finding that Green waived his right to apply for disability retirement benefits.

5. If the Division had relief to its detriment on Green's written waiver, it would be possible that Green would be estopped to deny that he waived his right to apply for disability retirement benefits. However, the evidence does not support such an estoppel either. The Division did send Green $1,682.58 of accumulated contributions which Green deposited in his personal account. But, the Division is not prejudiced by Green's action. If Green applies for disability retirement benefits and is approved, he would begin receiving approximately 25 percent of his monthly compensation of $1,016.01, or $254 per month, at the end of the month, the first day of which coincides with or next follows the date payment of his disability retirement benefits is approved. See Section 121.091(4), Florida Statutes (Supp. 1984). The Division can simply offset the first several monthly disability retirement payments against the $1,682.58 which is already has paid Green.

## RECOMMENDATION

Based upon the foregoing Findings of Fact and Conclusions of Law, it is recommended that Respondent Department of Administration, Division of Retirement: (1) enter a final order granting the Petition for Formal Proceedings in this case and determining that Petitioner, Timothy Green, has not waived his right to apply for disability

261

retirement benefits; and (2) process the application of Petitioner, Timothy Green, for disability retirement benefits.

RECOMMENDED this 4th day of October, 1985, in Tallahassee, Florida.